**Zachel v. Mahaney**
*[Cite as 6 AOA 201]*

*Case No. L-89-187*
*Lucas County, (6th)*
*Decided July 13, 1990*

*W. Patrick Murray, for Appellants.*

*David J. Rohrbacher, Matthew J. Rohrbacher and Barbara Anne Braun, for Appellee, Judith K. Mahaney.*

*Brandon G. Schnorff, Jr. and Kevin M. Ferguson, for Appellee, Oregon Board of Education.*

ABOOD, J.

This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted summary judgment in favor of appellee Oregon Board of Education ("the Board) and appellee Judith K. Mahaney and dismissed appellants' complaint.

Appellants have appealed setting forth the following assignments of error:

"I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT, JUDITH MAHANEY'S, MOTION FOR SUMMARY JUDGMENT. MATERIAL ISSUES OF FACT EXIST WHICH NEED TO BE RESOLVED BY THE TRIER OF FACT AS TO WHETHER THIS DEFENDANT WAS NEGLIGENT; WHETHER THE PLAINTIFF WAS NEGLI-GENT; WHETHER EITHER PARTY'S NEGLI-GENCE WAS A PROXIMATE CAUSE OF PLAINTIFF'S INJURIES; AND IF APPROXI-MATE, THE PERCENTAGE WHICH SHOULD BE APPORTIONED TO EITHER PARTY'S NEGLIGENCE IN PROXIMATELY CAUSING PLAINTIFF'S INJURIES.

"II. THE TRIAL COURT ERRED IN GRANTING DEFENDANT, OREGON BOARD OF EDUCTION'S, MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT:

"(1) THE BOARD WAS IMMUNE FROM LIABILITY UNDER THE RECREATIONAL USER IMMUNITY STATUTE (O.R.C. §1533.181)

"(2) THE BOARD WAS IMMUNE FROM LIABILITY UNDER THE POLITICAL SUBDI-VISION IMMUNITY STATUTE (O.R.C. 2744.02)

"(3) THE BOARD OWED NO DUTY TO PLAINTIFF, STEPHEN ZACHEL."

The undisputed facts giving rise to this appeal are as follows. On September 1, 1987, at approximately 6:00 p.m., appellant Steven Zachel, then fifteen years old, was involved in an accident while driving a motorcycle/dirt bike on the Board's property at Clay High School in Oregon, Ohio. Steven was traveling south on a two-lane service drive at the school which runs along the east side of the football stadium and dead-ends into a parking lot. Mahaney was traveling east along a one-lane roadway which runs along the south side of the football stadium and was intending to turn north onto the two-lane service drive. The one-lane drive curves north and empties into the service drive, and, on the inside of the curve, approximately eight to ten feet back from the road behind a fence there is a stand of evergreen trees. The accident oc-curred at the intersection of the two roadways. As a result of the accident Steven is paralyzed from his chest down and is permanently disabled.

On November 13, 1987, appellants Linda and Steven Zachel filed a complaint against appellee, Mahaney and appellee, the Oregon Board of Education. The complaint alleged that appellee Mahaney had negligently driven her vehicle into the path of Steven's motorcycle and that the Board had maintained a nuisance on the Clay High School property by allowing a growth. of evergreen trees which prevented the drivers in the area where appellee Mahaney had been driving from seeing vehicles approaching from the north. The complaint also alleged that the Board was negligent and careless in the manner in which it maintained the premises in light of the expected uses of the two roads involved. On January 27, 1988, appellee Mahaney filed her answer and on February 9, 1988, appellee Board filed its answer.

On February 28, 1989, the Board filed its motion for summary judgment setting forth bases on which it asserted it was entitled to judgment as a matter of law on appellants' complaint. In support of its motion for summary judgment the Board argued first that at the time of the acci-dent Steven was a recreational user of the school property and therefore the Board was entitled to immunity pursuant to R.C. 1533.181. In support

of this assertion the Board offered the deposition testimony of Joseph Toth, an administrative assistant for Oregon Schools. Toth testified that in 1987 he was in charge of the buildings and the grounds for the Oregon School System and that at that time he had been aware that people used the service road on which Steven was riding his dirt bike and that after regular school hours the school grounds were often used by the general public including bicycle riders, children, neighbors and students. The Board also offered Steven's deposition testimony in which he acknowledged that he had operated his dirt bike on the Clay High School property at least once previously, about one and one-half months before the accident. Also attached to appellee Board's motion for summary judgment was the affidavit of Larry D. Wadsworth who was employed as the freshman football coach in August 1987. Wadsworth stated that on September 1, 1987, he was conducting football practice on a field at the east side of the stadium between 3:15 or 3:30 p.m. and 5:00 p.m. when he saw Steven riding his dirt bike at high speeds on the gravel area behind the stadium and through the fields behind the field on which they were practicing. Also attached to the Board's motion for summary judgment was the affidavit of Rod Ashter, the wide receiver coach for the Varsity Football Team at Clay High School. Ashter stated that on September 1, 1987, he was coaching the varsity team on its practice field behind the stadium and that he observed Steven operating his dirt bike in the school parking lot, on the service drive, through the football practice field and on other fields bordering Corduroy Road for a period of over an hour. The Board also submitted the affidavit of Ray Waldendzak, the Oregon Fire Chief and a member of the Oregon Board of Education. Waldendzak also stated that on September 1, 1987, he observed appellant riding his dirt bike on the school property through the parking lots and along the lanes, occasionally doing "wheelies."

Appellee Board argued next that it was entitled to summary judgment on appellants' complaint because it was immune from liability pursuant to R.C. Chapter 2744 which grants political subdivisions immunity from tort liability. The Board argued that it was not guilty of maintaining a nuisance by planting or permitting evergreens to grow along the service road or by failing to place stop sign at the junction of the stadium road and the service drive. The Board submitted that these acts were within the discre-

tionary planning and enforcement powers of its employees and therefore none of the exceptions to the immunity set forth in R.C. Chapter 2744 were applicable.

The Board also argued that if the trial court determined that it was not entitled to recreational user immunity or immunity pursuant to R.C. Chapter 2744 then, under the theory of premises liability, appellant Steven Zachel should at most be afforded the status of a licensee. The Board submitted that as a licensor it is not liable to a licensee for ordinary negligence and owes no duty to a licensee except to refrain from wantonly, willfully, or intentionally injuring him.

Finally, the Board asserted that, based upon the uncontradicted evidence in the record, appellant was clearly guilty of negligence to a greater degree than the combined negligence of both appellees and was, therefore, precluded from any recovery.

On March 9, 1989, appellee Mahaney filed her motion for summary judgment. In support of her motion Mahaney incorporated, in part, the arguments of the Board. Mahaney also argued the record demonstrated that the accident was caused solely by Steven's reckless operation of the motor bike and that there was no evidence in the record which would raise a genuine issue of fact as to any wrongful conduct on her part.

March 27, 1989, appellants filed their memorandum in opposition to both motions for summary judgment. In opposition to the Board's motion for summary judgment appellants argued that R.C. 1533.181 does not provide the Board with immunity from liability for the accident that occurred on the roadways on its property. Appellants argued that Steven was not a recreational user at the time of the accident since the operation of a motor bike cannot be considered as "other recreational pursuits" as set forth in the statute. Appellants argued further that it was not the intent of the legislature to extend the recreational user statute to accidents occurring on roadways. Appellants also argued that R.C. Chapter 2744 does not grant immunity to political subdivisions for injury caused by the subdivision's failure to keep public roads in repair and free from nuisance. Appellants submitted that the evergreens located along the road obstructed appellee Mahaney's and Steven's vision and constituted a nuisance and that the maintenance of these trees was not a discretionary act. Appellants contended that since the Board assisted in maintaining a nuisance they

could have prevented injury to users of the roadway by erecting appropriate traffic signs.

In support of their arguments appellants submitted the deposition of William Berg, a civil engineer who was retained by them, to reconstruct the accident. In his deposition testimony Berg opined that one of the factors leading to the accident was the obstruction caused by the trees and the lack of clearly defined paths for the vehicles to travel. Appellants argued that even if Steven was given the status of licensee the trier of fact could reasonably conclude from the record that the obstruction created by the trees was a concealed danger of which Steven had no knowledge, and that the Board had knowledge and had done nothing to prevent the accident.

Appellants also argued that the record demonstrated that the Board was negligent and that appellee Mahaney failed to exercise ordinary care in entering appellant's lane of travel and that under comparative negligence law it is the prerogative of the jury to determine the percentage of negligence to be attributed to either party. Appellants also submitted that the degree of negligence that is attributable a fifteen year old is necessarily a matter for the jury to decide. Appellants asserted therefore that genuine issues of material fact existed precluding summary judgment and that both motions for summary judgment should be denied.

On May 24, 1989, the trial court filed its opinion and judgment entry. The trial court found first that the recreational user immunity statute, R.C. 1533.181 was applicable to the Board and that Steven was a recreational user when riding his dirt bike throughout the high school grounds and, therefore, the Board was entitled to judgment as a matter of law on that basis. The trial court also found that R.C. Chapter 2744 was applicable and that appellants' characterization of the stand of trees near the intersection as a nuisance was not well founded since it was not a defective condition of the street itself. The trial court found, therefore, that the Board was entitled to judgment as a matter of law on the basis of political subdivision immunity as well. The trial court then went on to hold that reasonable minds could only conclude that Steven was a licensee on the school property, that the condition of the premises was open and obvious and that there were no concealed or hidden dangers. The court also found that there was no evidence of wanton or willful conduct by the Board and that it was entitled to judgment as a matter of law under the theory of premises liability. As to appellee Mahaney's motion for summary judgment, the trial court found that when construing all the evidence in the record in a light most favorable to appellants, reasonable mind$could only conclude that appellee Mahaney acted as an ordinary, reasonable, prudent person in her driving and that her conduct was not negligent and that the proximate cause of appellant's injuries was Steven's own driving. The court found, therefore, that appellee Mahaney was also entitled to judgment as a matter of law.

It is from this decision that appellants have filed this appeal.

This court will consider first appellants' second assignment of error in which they assert that the trial court erred in granting summary judgment to appellee the Board. In support of this assignment of error appellants argue first that the trial court erred in finding the Board immune from liability under the recreational user immunity statute. Appellants submit that the circumstances of the accident herein, specifically Steven riding his motor bike on a roadway as any other operator of a motor vehicle would, is far removed from the intent of the legislature in granting immunity to owners of recreational property.

Appellee argues that the recreational user statute is applicable to political subdivisions, which include school districts, and that the evidence in the record shows that the character and the nature of the premises and its use by appellant fall within the application of the recreational use statute.

R.C. 1533.181 states:

"(A) No owner, lessee, or occupant of premises;

"(1) Owes any duty to a recreational user to keep the premises safe for entry or use;

"(2) Extends any assurance to a recreational user, through the act of giving permission, that the premises are safe for entry or use;

"(3) Assumes responsibility for or incurs liability for any injury to person or property caused by any act of a recreational user."

R.C. 1533.18(B) defines "recreational user" as:

"(B) *** a person to whom permission has been granted, without the payment of a fee or consideration to the owner, lessee, or occupant of premises, other than a fee or consideration paid to the state or any agency thereof, to enter upon premises to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits."

In *Johnson v. New London* (1988), 36 Ohio St. 3d 60, the Supreme Court of Ohio held that political subdivisions which hold certain lands open to public use without payment of a fee may also be immune from liability to a recreational user of that property. In *LiCause v. Canton* (1989), 42 Ohio St. 3d 109, the Supreme Court of Ohio found that the recreational use statute was applicable to boards of education. See, also, *Christman v. Board of Education* (June 8, 1989), Franklin App. No. 88AP-1075, unreported; *Wheeler v. Lakewood Bd. of Educ.* (Apr. 27, 1989), Cuyahoga App. No. 56267, unreported; *Kasunic, Jr. v. City of Euclid* (Dec. 15, 1988), Cuyahoga App. No. 54741, unreported. Accordingly, in this case the Board is entitled to immunity pursuant to R.C. 1533.181 if appellant Steven Zachel, was a recreational user of the property.

In *Miller v. Dayton* (1989), 42 Ohio St. 3d 113, 114-115, the Supreme Court of Ohio stated:

*"In determining whether a person is a recreational user under R.C. 1533.18(B), the analysis should focus on the character of the property upon which the injury occurs and the type of activities for which the property is held open to the public.* [Citations omitted.]

"In *Light* we held that the use of a gymnasium did not make a person a 'recreational user.' This conclusion was supported by the fact that 'R.C. 1533.18(B) is included in Title 15 of the Revised Code, having to do with conservation of natural resources and is part of R.C. Chapter 1533, dealing with fishing and hunting.' *Light, supra,* at 68, 28 OBR at 167, 502 N.E. 2d at 613. The gymnasium was not the type of 'premises' covered by the recreational-user statute. Rather, it was a completely enclosed, man-made facility.

"However, the presence of man-made improvements on a property does not remove the property from statutory protection. 'Premises,' as defined in R.C. 1533.18(A), 'means all *** lands, ways, waters, and any buildings and structures thereon ***.' To qualify for recreational-user immunity, property need not be completely natural, but its essential character should fit within the intent of the statute.

*"Generally speaking, recreational premises include elements such as land, water, trees, grass, and other vegetation. But recreational premises will often have such features as walks, fences and other improvements. The significant query is whether such improvements change the character of the premises and put the property outside the protection of the recreational user statute. To consider the question from a different perspective: Are the improvements and man-made structures consistent with the purpose envisioned by the legislature in its grant of immunity? In other words, are the premises (viewed as a whole) those which users enter upon '*** to hunt, fish, trap, camp, hike, swim, or engage in other recreational pursuits?'"* (Emphasis added.)

The *Miller* court then went on to identify types of activities which have been considered to be "other recreational pursuits":

"The phrase 'other recreational pursuits' has been broadly construed by this court and the courts of appeals to include snowmobiling, *** horseback riding, *** watching others swim, *** *motorcycle riding,* *** swinging, *** merry-go-round rides, *** and watching others play baseball, ***. At least one court has held that softball is a recreational pursuit for purposes of the statute." *Id.* at 115. (Citations omitted.) (Emphasis added.)

The *Miller* court concluded that:

"The foregoing review of cases prompts us to make a caveat. The existence of statutory immunity does not depend upon the specific activity pursued by the plaintiff at the time of the plaintiff's injury. Rather, the inquiry should focus on the nature and scope of activity for which the premises are held open to the public. The goal is to determine the character of the premises. If the premises qualify as being open to the public for recreational activity, the statute does not require a distinction to be made between plaintiffs depending upon the activity in which each engaged at the time of injury. For example, we recognize immunity to the owner of a park (which qualifies as recreational premises), whether the injury is to one who is jogging in the park, tinkering with a model airplane or reading poetry to satisfy a school homework assignment. Thus we attach no significance to the fact that Miller's injury may have occurred during a highly competitive softball tournament. The essential character of Dayton's Kettering Field is that of premises held open to the plaintiff, without fee, for recreational purposes." *Id.*

Here the relevant evidence in the record includes the deposition testimony of Toth who stated that after school hours the school grounds were often used by students and others and that the school yards draw the public to games, to athletic events and to use of the tennis courts, the ball diamonds, and other facilities, and that this use is not prohibited. Toth also stated that neighbors and students use bicycles, mopeds and

motorcycles to travel to and from the facilities. There is no evidence of any fee being charged by the school for these uses. There are also the affidavits as set forth above of the three men who indicated that appellant had been riding his motor bike around the school property, through the practice fields and in the parking lot that day for an extended period of time, occasionally doing "wheelies", and there is the testimony of appellant himself that he had previously driven his own dirt bike in the fields and through the parking lot doing "wheelies."

Upon review of all of the evidence that was before the trial court and the law as set forth above this court finds that there are no genuine issues of fact and that reasonable minds can only conclude that the property at issue herein was clearly open for recreational activities without charge and that appellant Steven Zachel was a recreational user thereon at the time of the accident. We find, therefore, that the trial court did not err in granting appellee Board's motion for summary judgment on the basis of the recreational user immunity statute to R.C. 1533.181.

Having determined that appellee Board is immune from tort liability pursuant to R.C. 1533.181, this court need not consider the alternative basis for immunity set forth by appellants and those arguments are hereby rendered moot. Accordingly, appellants' second assignment of error is found not well-taken.

In their first assignment of error appellants assert that the trial court erred in granting summary judgment in favor of defendant Mahaney. In support of this assignment of error, appellants argue that material issues of fact exist as to whether appellee Mahaney was negligent. Appellants submit that there is evidence in the record which demonstrates that Mahaney's conduct on the date of the accident was not reasonable under the circumstances. Specifically, appellants submit that Mahaney was negligent since, although she perceived the risk, she did not come to a full stop and look before entering the intersection, but instead continued through, not stopping until she was in Steven's line of travel. Appellants also argue material issues of fact exist as to whether Steven was negligent since there is conflicting evidence in the record as to his speed prior to the accident. Appellants submit that their expert placed his speed as being between twenty to thirty-five miles per hour, not fifty to sixty miles per hour as stated in the affidavits submitted by appellees. Appellants also submit that Steven's conduct must be judged according to the standard of ordinary care for a fifteen year old which is a question for the trier of fact. Finally appellants submit that it is for the jury to apportion the degree of negligence, if any, exhibited by each party and to determine the proximate cause of the accident.

Appellee Mahaney responds that there is no evidence in the record of any wrongful conduct on her part and, assuming *arguendo* that she was at all negligent the evidence of appellant's negligence is so clear that reasonable minds could only conclude that appellant's negligence exceeded any negligence on her part and therefore the trial court correctly granted summary judgment in her favor.

Civ. R. 56(C) provides in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only there from, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Summary judgment may be granted in favor of a defendant in a negligence action where the evidence is undisputed and, when construing that evidence in favor of the plaintiff, reasonable minds can only conclude that the defendant was not negligent, that any negligence on the part of the defendant was not the proximate cause of the plaintiff's Injury or that the plaintiff's negligence was greater than the negligence of the defendant. See, generally, *Ornella v. Robertson* (1968), 14 Ohio St. 2d 145; *Mitchell v. Ross* (1984), 14 Ohio App. 3d 75; *Burgard v. EFF* (1965), 1 Ohio App. 2d 483.

The parties agree that since the accident occurred on private property, statutory traffic provisions are inapplicable and the test is whether the parties exercised ordinary care. The first issue raised by this assignment of error is whether or not the trial court erred in holding, as a matter of law, that appellee Mahaney was not negligent and that her conduct was not the

proximate cause of appellant Steven Zachel's injuries.

The evidence in the record as to Mahaney's actions consists solely of her deposition testimony since appellant does not recall any of the events surrounding the accident. Mahaney testified that on the evening of September 1, 1987, she was at Clay High School to pick up her son and nephew from football practice. She had just picked up her nephew and was driving around the stadium looking for her son. Mahaney testified that as she approached the curve at the intersection with the service road, she slowed down to approximately six or seven miles per hour since the road was narrow and she did not know if someone would be traveling south on the service drive whom she felt would have the right of way. Mahaney also testified that the ever-green trees on her left at the curve made visibility to the left difficult up to a certain point in the road. Mahaney testified that as she pulled out into the intersection, she did not hear anyone coming but stayed to the right, aware that the intersecting roadway was two lanes. She stated that when she first saw appellant he was about one hundred eighty feet down the road by the stadium. Mahaney stated that she did not think that they would collide because she did not think that he was traveling that fast, but when appellant was suddenly "almost on top of her," approximately fifty feet away, she realized that he was traveling quite fast, in her estimation fifty to sixty miles per hour. Mahaney testified further that when she realized that appellant had not seen her, since he made no attempt to slow down, instead of proceeding through the intersection she stopped her car in the middle where she was partially blocking both the northbound and the southbound lanes. She felt that appellant then had room to go around her on either side and she did not want to get in his way, whichever side he chose. Finally, Mahaney testified that when appellant was approximately thirty-five to forty feet in front of her, he steered left as if to pass in front of her car and then, as if he changed his mind, he steered to the right at which point the dirt bike went down on its side and slid straight at her while appellant slid toward her at an angle.

Also in the record is the deposition testimony of appellant's expert witness a William Berg. Berg testified that he was a professor in the Department of Civil Environmental Engineering at the University of Wisconsin and that he was involved in projects concerning the development of procedures to evaluate highway improvements and to provide training and technical assistance to communities on traffic signal control systems. Berg testified that these programs involve research and compilation of data on highway deficiencies and engineering characteristics of roads. Berg testified that he had reviewed photographs and drawings of the accident site, had surveyed the site, had reviewed the affidavits and deposition testimony of witnesses, and from this information had attempted to reconstruct the accident. Berg testified that even though the evergreen trees on the curve of the road limited appellee Mahaney's sight, with the posted speed of fifteen miles per hour, someone coming around the curve as she did would only need to see approximately one hundred fifty feet to the north to safely clear the intersection. Berg testified that even though sight was limited in certain positions, it would have been possible for appellee to have stopped in a position where the crossing maneuver could have been safely accomplished, however, the evidence indicated that instead of stopping, Mahaney proceeded into the intersection in a continuous movement, not stopping until she saw appellant and then only when she occupied one-half of both lanes. Berg also testified that, given certain facts and conditions for the two vehicles, he calculated that a speed of approximately thirty miles per hour for the dirt bike would be consistent with the range of conditions testified to and that the speed at impact would have been at approximately twenty-three miles per hour.

Also in the record is the deposition of appellee's expert, Dr. Peter Cooley. Cooley testified that he conducts research for highway safety which includes research on road structure, function, signs, markings and intersections, as well as the investigation of real life crashes. Cooley testified that in investigating this accident he reviewed the accident report, photographs of the scene taken the day after the accident, witness statements and other information that was available on the crash. He testified that he was also informed as to the extent of the damage to both the car and the dirt bike. Based upon his investigation Cooley testified that, at distances of twenty-five and thirty feet from where impact occurred, Mahaney had good visibility but that visibility would not have been good if the vehicle had been backed up further onto the access road.

Upon consideration of all of the evidence that was before the trial court, this court finds that although the evidence of Mahaney's actions

on the day of the accident are undisputed, when reviewing that evidence, including the testimony of both experts, in a light most favorable to appellants, competing inferences can be drawn as to whether or not appellee Mahaney acted reasonably and, if she did not, whether her negligence was a proximate cause of appellant's injuries. We cannot say, therefore, that from this evidence reasonable minds could only conclude that appellee was not negligent and that her conduct was not the proximate cause of appellant's injuries.

The second issue raised by appellants' first assignment of error is whether or not Steven was contributorily negligent and, if so, whether his negligence was, as a matter of law, greater than the negligence, if any, of appellee Mahaney.

Under the comparative negligence standard set forth in R.C. 2315.19, a plaintiff may recover for injuries flowing from a defendant's negligence even if that plaintiff is negligent provided, however, that the plaintiff's negligence is not greater than the negligence of the person whom recovery is sought. *Id.*

The evidence in the record as to Steven's conduct consists of the deposition testimony of appellee Mahaney, the affidavits of three men who witnessed appellant riding his dirt bike immediately preceding the accident, and expert testimony and opinions as to his 16. speed at the time of the accident. Appellee Mahaney testified that she calculated appellant's speed as he traveled south on the service road toward her at fifty to sixty miles per hour. In his affidavit, Larry Wadsworth stated that he saw appellant riding his dirt bike that afternoon during football practice at high speeds through the fields and at 6:00 p.m. he heard the bike "wind up" and saw appellant "come flashing by" on the service drive traveling at least fifty miles per hour. Rod Ashter, in his affidavit, testified that he observed appellant operating his dirt bike during football practice that afternoon in the parking lot, the service drive and on the football field in excess of fifty miles per hour and last saw him on the service road seconds before the collision operating in excess of fifty miles per hour. Ray Walendzak, in his affidavit, stated that he observed appellant riding his dirt bike that afternoon at speeds between forty and fifty miles per hour and heard the bike "wind up" for a final run just prior to hearing the sound of the collision. Appellee's expert, Dr. Cooley, testified that based upon his reconstruction of the accident, he calculated appellant's speed at between thirty-five to fifty-five or sixty miles per hour prior to appellant observing the impending collision and braking. Appellant's expert, William Berg, testified that based upon his reconstruction of the accident he calculated appellant's speed as being between twenty to thirty miles per hour prior to the accident.

Upon consideration of all the evidence that was before the trial court including the evidence set forth above, this court finds that a genuine issue of fact exists as to appellant's speed at the time of the accident. This court finds further that even if reasonable minds could only conclude that appellant was negligent, we cannot say as a matter of law that, when reviewing all of the evidence in the record in a light most favorable to appellants, reasonable minds could only conclude that appellant's negligence was greater than the negligence, if any, of appellee Mahaney.

Accordingly, this court finds the trial court erred in granting summary judgment in favor of appellee Mahaney and appellants' first assignment of error is found well-taken.

Upon consideration whereof this court finds that the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. This cause is remanded to said court for further proceedings as to appellee Mahaney. Costs assessed in part to appellee Judith K. Mahaney and appellants Linda and Steven Zachel.

*Judgment affirmed in part and reversed in part.*

HANDWORK, P.J., ABOOD, J., concur.

Prior to his death, Judge John J. Connors, Jr., did participate in the decision-making process of this case.